**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 8th day of April, 2013.**



_____
Robert D. Berger
United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

CHARLES DAVID CUNNINGHAM and  Case No. 12-20662
CHARITY LYNN CUNNINGHAM,
      Debtors.

---

**MEMORANDUM OPINION AND ORDER DENYING IN PART AND
GRANTING IN PART DEBTORS' MOTION TO DETERMINE SECURITY INTEREST
OR, IN THE ALTERNATIVE, TO REDEEM (Doc. No. 15)**

Comes on for hearing the Debtors' Motion for Order Determining that Certain Personal Property Owned by the Debtor Is Not Subject to Any Security Interest, or, in the Alternative, Granting Debtors' Request to Redeem Property[1] (hereinafter "Motion"). Creditor Capital One, N.A., the owner of the account previously owned by HSBC Bank Nevada, N.A. (hereinafter "Capital One"), filed a response[2] to the Motion. Debtors filed a separate brief in support[3] of their

---

[1] Doc. No. 15.
[2] Doc. No. 21.
[3] Doc. No. 28.

13.04.08 Cunningham Order.wpd

Motion to which Capital One filed a brief in opposition.[4] The matter was submitted to this Court on the parties' briefs, including attachments thereto.

This matter constitutes a core proceeding[5] and the Court has jurisdiction to decide the matter in controversy.[6]

Upon review of the pleadings, the Court's file, and the arguments of counsel, the Court is prepared to rule.

## **Background**

Debtors filed a joint Chapter 7 petition under the United States Bankruptcy Code.[7] Prior to the filing of the bankruptcy petition, Debtors purchased personal property in the form of consumer goods ("Consumer Goods") from Best Buy, N.A., a national retailer of consumer electronics and related products and services. Some of Debtors' purchases were made on credit provided by Capital One. In their brief, the Debtors concede that they purchased on the Capital One account "two ipods, a camera, a computer, and other micellaneous [sic] . . . ."[8] The items were purchased in 12 separate consumer transactions and are consumer goods. Three documents are pertinent to the Court's analysis. These documents are attached as exhibits to Capital One's brief in opposition[9] to the Motion. In a footnote to its brief, Capital One describes these documents as follows:

---

[4] Doc. No. 30.
[5] 11 U.S.C. §157(b).
[6] 28 U.S.C. §1334.
[7] 11 U.S.C. §101 *et seq.*, hereinafter the "Code."
[8] Doc. No. 28, at 1.
[9] Doc. No. 30.

> Exhibit C [credit application] is the application signed by Debtor, which states, "you grant the Bank a purchase money security interest in the goods purchased on your Account." Furthermore, the application states in that same section that the cardholder, here the Debtors, agree to the terms and conditions of the Cardholder Agreement (attached as Exhibit D is the Cardholder Agreement). It states in paragraph 17 of the Cardholder Agreement entitled "Security," "you grant us a purchase money security interest in the goods purchased with your Card.". [sic] Therefore, clearly the requisite language for Debtors to grant Secured Creditor [Capital One] a purchase money security interest exists.[10]

Exhibit C, the "Application," is coincidental to Debtors' first purchase and is dated January 16, 2010. It appears that it was signed by both Debtors. The Application provided to the Court is a single-sided page. The Application contains the language recited above by Capital One; it is buried in a 16-line paragraph in a small font. This Court found it necessary to use a magnifying glass to find and read the language. The language appears in the ninth and tenth lines of the paragraph. With the assistance of a magnifying glass, the Court also was able to find buried in the sixth line of this Application paragraph that the Debtors agreed to the terms and conditions of the Cardholder Agreement. The Application indicates that the Cardholder Agreement would be sent to the Debtors after the Application and initial purchase of consumer products on January 16, 2010. The Cardholder Agreement is not signed. Buried in 41 numbered paragraphs in small print in the Cardholder Agreement is language that refers to Debtors granting to Capital One "a purchase money security interest in the goods purchased with your Card."[11] Exhibit B to Capital One's brief in opposition is comprised of 12 Best Buy receipts ("Receipts"), all but one of which were signed by one of the Debtors. The Receipts contain basic information, such as the location of the Best Buy store, a brief description of items purchased and the price of these items, and the

---

[10] Doc. No. 30, at 2 n.1.
[11] See Doc. No. 30, Exhibit D ¶ 17.

- 3 -

date and time of the sale. The Receipts also state "Payment Type: BBY CARD/HSBC." The following language appears below the place of signature:

> KEEP YOUR RECEIPT!
> I HAVE READ AND AGREE TO ALL
> RETURN AND REFUND POLICIES
> PRINTED ON THE BACK OF THIS
> RECEIPT AND POSTED IN THE
> STORE. I HAVE RECEIVED GOODS
> AND/OR SERVICES IN THE AMOUNT
> SHOWN ABOVE.
> BESTBUY.COM RETURN AND EXCHANGE
> INFORMATION AND PRICE MATCH POLICY
> MAY VARY SLIGHTLY FROM IN-STORE POLICY.
> PLEASE LOG ONTO WWW.BESTBUY.COM
> FOR COMPLETE DETAILS

Only the front of the Receipts were provided to the Court. Whatever is contained on the reverse side of the Receipts was not provided. Regardless, it appears that the reverse side of the Receipts only contain language pertinent to the return and refund policies of Best Buy. There is no reference on the Receipts to security interests, purchase money or otherwise, retained by anyone. The Receipts also do not contain a reference to the Application or the Cardholder Agreement.

## **Analysis**

Debtors request a determination by this Court that Capital One does not hold a security interest, purchase money or otherwise, in the Consumer Goods purchased by Debtors at Best Buy. If the Court does find that such a security interest exists, then the Debtors plead in the alternative that this Court grant the Debtors' redemption of the Consumer Goods and approve a redemption value in the amount of $130.00. Capital One argues that it does hold a purchase

- 4 -

13.04.08 Cunningham Order.wpd

money security interest in the Consumer Goods and that if the Debtors were to redeem the Consumer Goods under Code §722, the Consumer Goods have a value of $2,100. The Debtors assert that the balance on the Capital One account is $1,556.49.

Capital One does not dispute that the transactions in question are "consumer transactions" or that the products purchased by the Debtors are "consumer goods."[12] A security agreement is simply "an agreement that creates or provides for a security interest."[13] One alternative to authenticate a security agreement is for the debtors to sign it.[14] With regard to the descriptions of the collateral in which the secured party takes an interest, Kansas law provides:

> **84-9-108**. (a) **Sufficiency of description.** Except as otherwise provided in subsections (c), (d), and (e), a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.
> . . .
> (e) **When description by type insufficient.** A description only by type of collateral defined in the uniform commercial code is an insufficient description of:   . . .
>    (2) in a consumer transaction, consumer goods, a security entitlement, a securities account, or a commodity account.

With respect to the sufficiency of the collateral description for consumer transactions contained in a security agreement, it has been observed:

> Revised Article 9 continues the requirement that a security agreement or financing statement contain a description of the collateral that reasonably identifies the collateral. The use of categories or types of collateral defined under the UCC (i.e., inventory) is still permitted. **However, in consumer transactions** and a limited number of other situations, **a description by type or class of**

---

[12] *See* K.S.A. 84-9-102(a)(23) and (a)(26) defining the terms.
[13] *See* K.S.A. 84-9-102(a)(72).
[14] *See* K.S.A. 84-9-102(a)(7)(A).

- 5 -

13.04.08 Cunningham Order.wpd

**collateral is ineffective as to after-acquired property.** Note that Revised Article 9 permits "supergeneric" descriptions in the financing statement such as "all assets" or "all personal property" but not in the security agreement.[15]

Property "type" descriptions of collateral are not sufficient for consumer goods.[16] The essence of the Debtors' argument is that the description of the Consumer Goods in which Capital One asserts a security interest is insufficient as it only refers to the type of collateral, and Capital One therefore does not have a security interest in the Consumer Goods. Debtors argue that any security interest that Capital One may have never attached to the Consumer Goods because an insufficient description is fatal to the attachment of Capital One's security interest to the Consumer Goods. In response, Capital One argues that the description is sufficient if one combines the language contained in the Application, the Receipts, and the Cardholder Agreement. The issue before the Court is whether the description is sufficient as required by K.S.A. 84-9-108(e)(2) to allow attachment and enforceability under K.S.A. 84-9-203(b)(3)(A). Aside from an insufficient description of the collateral, Debtors do not argue that Capital One did not comply with the other prerequisites of a security interest with respect to enforceability and attachment. As to these terms, K.S.A. 84-9-203 provides in pertinent part:

> **84-9-203**. (a) **Attachment.** A security interest attaches to collateral when it becomes **enforceable against the debtor with respect to the collateral**, unless an agreement expressly postpones the time of attachment.
> (b) **Enforceability.** Except as otherwise provided in subsections (c) through (i), a security interest is enforceable against the debtor and third parties with respect to the collateral only if:
> (1) Value has been given;

---

[15] John K. Pearson and J. Scott Pohl, *A Brief Overview of Revised Article 9 in Kansas*, J. KANSAS BAR ASS'N, Sept. 2003, at 24 (footnotes omitted) (emphasis added).
[16] *Id*. at 29, citing K.S.A. 84-9-108(e) in n.110.

- 6 -

13.04.08 Cunningham Order.wpd

Case 12-20662   Doc# 31   Filed 04/08/13   Page 6 of 11

(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
(3) one of the following conditions is met:
(A) The debtor has authenticated a security agreement that provides a **description of the collateral** and, if the security interest covers timber to be cut, a description of the land concerned; . . . .[17]

Capital One directs this Court to *Baldwin v. Hays Asphalt Constr., Inc.*,[18] for the proposition that the entire security agreement may be contained in more than one document. The *Baldwin* case involved a commercial transaction and by definition was not a consumer transaction. The facts in *Baldwin* are interesting. A security agreement was signed between the parties in 1990, the purpose of which was to collateralize the debtor's performance under a lease that was executed two years later. Also, the debtor as a fictitious entity was not formed until two years after execution of the security agreement. Under the 1994 version of the Uniform Commercial Code ("U.C.C."), the *Baldwin* court found that the original security agreement did not need to identify the debt that was secured.[19] The *Baldwin* court observed: "In determining whether a security interest exists, the intent of the parties controls, and that intent may best be determined by examining the language used and considering the conditions and circumstances confronting the parties when the contract was made."[20] The *Baldwin* court observed that under the U.C.C., timing and sequence were not relevant as to the execution of more than one document to establish a security agreement.

---

[17] Emphasis added.
[18] 20 Kan. App. 2d 853, 855 (1995).
[19] *Baldwin*, 20 Kan. App. 2d at 856.
[20] *Id.* at 857. However, under the revised U.C.C., intent may no longer be controlling. *See Hitchin Post Steak Co. v. Gen. Elec. Capital Corp. (In re HP Distrib., LLP)*, 436 B.R. 679, 695 (Bankr. D. Kan. 2010) (discussing leases, disguised security agreements, and the economic realities test under K.S.A. 84-1-203(c)).

13.04.08 Cunningham Order.wpd

A case not cited by the parties that is somewhat instructive is *In re McLeod*.[21] Citing to the Michigan version of the U.C.C., the court observed: "Attachment of a security interest occurs when (1) debtor has signed a security agreement which contains a description of the collateral; (2) Value has been given; and (3) The debtor has rights in the collateral."[22] The description of the collateral is sufficient "if it reasonably identifies what is described."[23] Under Michigan law, a retail charge agreement was considered signed and accepted by the buyer if the charge account were used by the applicant.[24] In *McLeod*, the debtor or his wife signed each of the sales slips. "The sales slips identified the item(s) purchased, incorporated the SearsCharge Agreement, and granted Defendant [Sears] a security interest."[25] The *McLeod* court ultimately found that Sears enjoyed a purchase money security interest in the consumer goods purchased on the retail charge account. This "composite-document theory" has found a home with other courts.[26] The deciding factor that underpins these decisions is that the Sears sales slips contained simple and clear purchase money security interest language. Courts have treated the Sears sales slips as security agreements when "(1) the sales slip incorporates a long-form security agreement by reference, (2) the retailer is prepared to present evidence of its general documentation practices, and (3) the sales slip contains solid 'granting' language and a transaction-specific description of the merchandise."[27]

---

[21] 245 B.R. 518 (Bankr. E.D. Mich. 2000).
[22] *McLeod*, 245 B.R. at 522 (internal quotations and statutory citation omitted).
[23] *Id.* (internal quotations omitted).
[24] *Id.*
[25] *Id.* at 523.
[26] 2 BARKLEY CLARK & BARBARA CLARK, THE LAW OF SECURED TRANSACTIONS UNDER THE UNIFORM COMMERCIAL CODE ¶ 12.2[2] at 12-8 to 12-11 (3d ed. 2013).
[27] *Id.* at 12-9.

The difference between *McLeod*, the cases cited by Clark,[28] and the case *sub judice* is that the receipts signed by debtors in those cases specifically stated that Sears retained a purchase money security interest in the goods that were purchased in the transaction. Michigan law cited in *McLeod* also provided that a retail customer assumed and agreed to the terms of the credit agreement upon use of the account. In the case *sub judice*, the Capital One Receipts do not contain a reference to a purchase money security interest or any other security interest. The only caution contained on the Capital One Receipts refers to the return and refund policies printed on the back of the Receipts and posted in the store. There is no reference to the Cardholder Agreement or the original Application on the Receipts. In *McLeod*, Sears was both the seller and the lienholder; in contrast, in the case *sub judice*, Best Buy is listed at the top of the Receipts, and the only reference to Capital One's predecessor-in-interest HSBC is: "Payment Type: BBY CARD/HSBC." Capital One's argument is that the description of the Consumer Goods is sufficient when one considers the three documents as a single security agreement. Remove any one of these legs and its argument, as with the metaphorical table, does not stand.

Is it enough to string together a signed Application that has buried within it purchase money security interest language; a Cardholder Agreement that was not signed by the Debtors that was mailed to them after the Application and buried within which is also purchase money security interest language; and 12 Receipts which, except for one, were signed but did not contain a reference to a security interest, the Application or the Cardholder Agreement? The answer is no: An enforceable security agreement has never existed between these parties as to

---

[28] *Id.* at ¶ 12.2[2] at 12-8 to 12-11 (3d ed. 2012)

the Consumer Goods. If *Baldwin* is followed, and it is the intent of the parties that must be discerned, then it is difficult to imagine that under these facts the Debtors intended to grant a security interest in the Consumer Goods purchased by the Debtors. However, this Court need not address the intent of the parties since the documentation is facially insufficient to have created a security interest in the Consumer Goods. Capital One may not rely upon the description of the Consumer Goods purchased on the Receipts because the Receipts are not a component of a security agreement between the parties. The type of collateral referenced in the "goods purchased on your Account" contained in the original Application is not sufficiently descriptive to allow attachment and enforceability under K.S.A. 84-9-108(e) and K.S.A. 84-9-203(b)(3)(A). For the same reason, the language in the Cardholder Agreement is insufficient in that it only grants a purchase money security interest "in the goods purchased with your Card." Although the Court need not reach this issue, one might ponder whether an account agreement that is referred to in a credit application but that is later mailed to the debtors should be considered to establish a security agreement. The U.C.C. requires that a security agreement be authenticated, which in the Capital One situation means signed by the Debtors, and the Agreement was never signed by the Debtors. It appears that in *Baldwin*, all of the documents were signed by the debtor.

## Conclusion

Although Capital One argues that a security agreement may be established with reference to more than one form or document, in the case *sub judice*, the Receipts are the only documents that contain a sufficient description of the Consumer Goods, and the Receipts are not a

component of the security agreement.  The security agreement is not enforceable under Kansas law as to consumer goods and Capital One's security interest never attached to the Consumer Goods purchased by the Debtors.  The security agreement is not enforceable in a consumer transaction because, excluding the Receipts, the collateral is only described by type or class.

    IT IS THEREFORE the finding of this Court that Capital One does not hold a security interest in the Consumer Goods.  The Debtors' Motion to redeem and for valuation is denied as moot.

    IT IS SO ORDERED.

###

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS